UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| MICHAEL R. SMITH, SR., | ) | Case No.: | 08-10080-JDW |
| | ) | | |
| Debtor. | ) | Chapter: | 11 |
| | ) | | |

| | | | |
|---|---|---|---|
| ESTATE OF MAGGIE MAE SMITH, | ) | | |
| | ) | | |
| Plaintiff. | ) | | |
| | ) | | |
| v. | ) | A.P. No.: | 08-01181-JDW |
| | ) | | |
| MICHAEL R. SMITH, SR., | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION AND ORDER

This adversary proceeding is before the Court on the Motion for Partial Summary Judgment (the "Motion")(A.P. Doc. 60) filed by Michael R. Smith, Sr. (the "Defendant") on January 17, 2013 and the response thereto (the "Response")(A.P. Doc. 66). A hearing on the Motion was held on June 11, 2013. Appearing at the hearing were R. David Ringer, attorney for plaintiff Estate of Maggie Mae Smith (the "Plaintiff"), and Craig Geno and James Mozingo, attorneys for the Defendant. Plaintiff commenced this adversary proceeding with the filing of the Complaint (A.P. Doc. 1) on September 9, 2008, wherein the Plaintiff seeks a determination that debts arising from Defendant's alleged self-dealing related to a trust be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2), § 523(a)(4) and § 523(a)(6). This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference dated August 6, 1984. This

1

is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. §157(b)(2)(A), (B), and (I). The Court has considered the arguments of counsel, the pleadings, the evidence, the briefs and the law, and finds and concludes that summary judgment is due to be granted in favor of Defendant as to the transfer of the William Wilson Property.

### I. FINDINGS OF FACT[1]

The following facts are undisputed, if complicated. Plaintiff is the estate of the now deceased Maggie Mae Smith, acting through David Smith in his capacity as executor of her estate.[2] Maggie Smith was the mother of both David Smith and, David's brother, defendant/debtor Michael R. Smith, Sr. Defendant is the acting trustee for both the Maggie Legett Smith Irrevocable Trust (the "Maggie Trust") and the Miss Eva Elise Legett Revocable Trust (the "Eva Trust"), of which Maggie Smith was a contingent beneficiary. (A.P. Doc. 1, ¶¶ 3 and 4). The allegations of self-dealing and breach of fiduciary duty leveled by the Plaintiff against the Defendant stem from the Defendant's position as trustee of the Eva Trust and his actions while serving in that capacity. Although the Complaint alleges several instances of self-dealing, the Motion pertains exclusively to the real property known as the "William Wilson Property." (A.P. Doc. 60, ¶ 2).

---

[1] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

[2] David Smith filed a petition on January 4, 2002, in the Chancery Court of Rankin County to have himself appointed as conservator to Maggie Mae Smith. (A.P. Doc. 60, Ex. A, ¶ 12). On February 1, 2002, David Smith obtained an order from that same court appointing him as conservator. *Id.* Upon the death of Maggie Mae Smith, David Smith became executor of her estate. Plaintiff was originally listed in this proceeding as "Conservatorship of Maggie Mae Smith". (A.P. Doc. 1). A motion for substitution of party was filed on March 25, 2011, after the death of Maggie Mae Smith. (A.P. Doc. 21). An order granting the motion for substitution of party was entered on February 10, 2012. (A.P. Doc. 25).

2

Katie Legett Wilson ("Aunt Katie") – sister to Ms. Maggie Smith and aunt of Plaintiff and Defendant – was the original owner of the William Wilson Property. In 1984, Aunt Katie deeded the William Wilson Property to the Defendant in his personal capacity (the "1984 Deed"). (A.P. Doc. 60, Ex. F). The 1984 Deed was never recorded in the public records. (A.P. Doc. 60, Ex. A, ¶ 6).

Aunt Katie and her sister, Eva Elise Legett ("Aunt Eva"), subsequently established the Mrs. Katie Louise Legett Wilson and Miss Eva Elise Legett Revocable Trust (the "Katie and Eva Trust"). (A.P. Doc. 60, Ex. H). With Defendant's knowledge and despite the prior 1984 Deed to Defendant, Aunt Katie deeded the William Wilson Property to the Katie and Eva Trust. (A.P. 60, Ex. A, ¶ 7). The Defendant stated in his affidavit that he had no use for the land at the time, and did not object to the land being placed in the Katie and Eva Trust. *Id.* Upon Aunt Katie's death, Aunt Eva conveyed four pieces of property – including the William Wilson Property - from the Katie and Eva Trust into the Eva Trust, effectively ending the Katie and Eva Trust. (A.P. Doc. 60, Ex. I). Aunt Eva was the settlor, creator, and sole beneficiary of the Eva Trust at the time of its establishment. (A.P. Doc. 60, Ex. E). At Aunt Eva's direction, Defendant served as the trustee of the Eva Trust. (A.P. Doc. 62, Pg. 2).

On March 15, 1999 Defendant, acting in his capacity as trustee of the Eva Trust, deeded the William Wilson Property from the Eva Trust to himself (the "1999 Deed"). (A.P. Doc. 60, Ex. C). The transfer of the William Wilson Property out of the Eva Trust to the Defendant was made at the direction of Aunt Eva, as evidenced by her written instructions. (A.P. Doc. 60, Ex. J). Although the consent of contingent beneficiary Maggie Smith was not required, she also consented to the transfer, as evidenced by her written acknowledgement. (A.P. Doc. 60, Ex. K).

3

Defendant subsequently sold the William Wilson Property and retained the proceeds from the sale. (A.P. Doc. 60, Ex. D).

In 2002, David Smith filed a petition to become, and was subsequently appointed as, conservator for Ms. Maggie Smith. On August 9, 2002, the Conservatorship of Maggie Mae Smith filed a petition to remove Defendant as trustee of the Eva Trust.[3] (A.P. Doc. 60, Ex. G). The petition was pending in Chancery Court in Rankin County, Mississippi, at the time the Defendant filed for bankruptcy on September 9, 2009. (A.P. Doc. 1, ¶ 7). No hearing on the petition has been held, and Defendant remains the trustee for both the Maggie Trust and the Eva Trust.

## II. CONCLUSIONS OF LAW

### A. Standard

Rule 56 of the Federal Rules of Civil Procedure governs the process by which a court will grant or deny a motion for summary judgment.[4] It is well established that summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, the record, pleadings, and evidence demonstrate that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003). "A material fact is one that 'might affect the outcome of the suit under the governing law' and a 'dispute about a material fact is "genuine"...if the evidence is such that a reasonable jury could return a verdict for the

---

[3] The Complaint states that Plaintiff filed a petition to remove Defendant as trustee of the Maggie Legett Smith Irrevocable Trust on or about August 9, 2002. (A.P. Doc. 1, ¶ 1). However, the filings appear to show that Plaintiff actually attempted to have Defendant removed as trustee for the Eva Trust. (A.P. Doc. 60, Ex. G).

[4] Federal Rule of Bankruptcy Procedure 7056 incorporates without modification of Rule 56 of the Federal Rules of Civil Procedure.

4

nonmoving party.'" *Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257 F.3d 449, 456 (5th Cir. 2001)(*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 292 (1986)).

The Fifth Circuit Court of Appeals and Supreme Court have both clearly held that the moving party is responsible for submitting sufficient evidence that would show an absence of genuine issue of a material fact.

> [T]he party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," ... If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*citing Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553). However, that obligation does not negate the responsibilities of the non-moving party as to issues on which that party bears the ultimate burden of proof. *Celotex*, 477 U.S. at 323.

In response to Defendant's Motion, Plaintiff provided the Court with only a general response, admitting or denying the numbered assertions by the Defendant. (A.P. Doc. 66). The Plaintiff provided no evidence, affidavits, or even explanation for the general denial. While this may be an appropriate format for an answer to a complaint, it is usually insufficient as a response to a motion for summary judgment. Subsection (e) of Federal Rule of Procedure provides in relevant part:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> .....
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it...

5

*Id.* A party may not successfully defeat a motion for summary judgment with a blanket denial that the moving party's claims and assertions are correct, without also providing some degree of supporting evidence to show that there is a genuine issue as to a material fact. "If the moving party meets its burden, the non-movant must designate specific facts showing there is a genuine issue for trial." *Little,* 37 F.3d at 1075. As the Supreme Court has stated, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex,* 477 U.S. at 323-24. In its Response, Plaintiff has only provided such "factually unsupported claims or defenses." *Id.*

### B. <u>Statute of Limitations</u>

Though the Complaint is unclear, it appears as though Plaintiff is attempting to bring an action for money damages equal to the sale price for which Defendant sold the William Wilson Property in 1999.[5] Though the Plaintiff travels under the provisions of the Bankruptcy Code[6] pertaining to nondischargeability of a debt, the Plaintiff must first establish that there is a debt actually owed.

> A determination of nondischargeability is a two step process. First, the claim must be established under relevant state or non-bankruptcy federal law. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 657–58 and n. 9, 112 L.Ed.2d 755 (1991). Only then does the federal issue of nondischargeability come into play. A creditor cannot get beyond the first step if its underlying claim fails.

*In re Taylor,* 137 B.R. 925, 929 (Bankr. S.D. Ind. 1991). Beginning with the question of the underlying debt, the Court must consider all relevant factors to the cause of action, including any applicable statute of limitations. "[T]he establishment of the debt itself, is governed by the state

---

[5] Plaintiff's only request of the Court is that the debt allegedly owed by the Defendant for the William Wilson Property be declared nondischargeable pursuant to 11 U.S.C. 523(a)(2), (4) and (6). The Plaintiff does not specifically request that the Court determine whether or not the Defendant's actions were improper, or if the proceeds from the land sale are property belonging to the Plaintiff.

[6] All references to the "Bankruptcy Code" refer to Title 11 of the United States Code.

6

statute of limitations—if suit is not brought within the time period allotted under state law, the debt cannot be established." *In re McKendry*, 40 F.3d 331, 337 (10th Cir. 1994). If the statute of limitations on the underlying cause of action has run, a suit seeking an alleged debt to be declared nondischargeable is also necessarily barred. *Id.*

Under Mississippi state law, the applicable statute of limitations for this action is three (3) years.[7] MISS. CODE ANN. § 15-1-49. The statute of limitations begins to run once the cause of action accrues. *Id.* In Mississippi, recordation of interest in real property provides constructive notice, thereby commencing the running of the statute of limitations. *Bedford v. Kravis*, 622 So.2d 291, 295 (Miss. 1993); *Metropolitan Nat'l Bank v. United States*, 901 F.2d 1297, 1303-04 (5th Cir. 1990).[8]

Under Mississippi law, the execution and delivery of the 1984 Deed from Aunt Katie, the undisputed owner, to the Defendant, met the necessary statutory requirements and validly transferred title of the William Wilson Property upon delivery of the deed to Defendant in 1984. MISS. CODE ANN. §§ 89-1-1 and 89-1-3; *Estate of Dykes v. Estate of Williams*, 864 So.2d 926, 930 (Miss. 2003)("For a deed to be valid in Mississippi, the grantor must deliver it to the grantee."). Although Defendant admits that he never recorded the deed, it is nevertheless effective as to the grantor, their "heirs, and as to all subsequent purchasers with notice or without

---

[7] Miss. Code Ann. 15-1-49 provides a three (3) year "catch all" statute of limitations for actions for which no other period of limitations is prescribed.

[8] The Court acknowledges a separate state law 10 year statute of limitations for actions involving trusts and fiduciary wrongdoing, but notes that application of such statute applies only in cases were the cause of action and remedy sought are wholly equitable in nature. MISS. CODE ANN. § 15-1-39; *Winters v. AmSouth Bank*, 964 So.2d 595 (Miss. Ct. App. 2007). As the Supreme Court of Mississippi has definitively held, "the application of section 15-1-39 is limited, in that the cause of action and the remedy of the case must be purely and exclusively equitable, or the general statute of limitations will be applied." *Wholey v. Cal-Maine Foods, Inc.*, 530 So.2d 136, 139 (Miss. 1988). As the Plaintiff seeks recovery in the amount for which Defendant sold the land in question, the cause of action and remedy may not be properly categorized as purely and exclusively equitable.

valuable consideration." MISS. CODE ANN. § 89-5-3. *See also Cotton v. McConnell*, 435 So.2d 683 (Miss. 1983).

Even assuming that the William Wilson Property was not transferred by the 1984 deed, there exists between the Plaintiff and the Defendant no debate that, at the very latest, the ownership of the property was transferred to the Defendant on March 15, 1999, the date of the 1999 Deed which was recorded. (A.P. Doc. 60, ¶ 3)(A.P. Doc. 66, ¶ 3). In addition, Defendant's unrebutted affidavit indicates that Plaintiff was informed of the 1999 transfer prior to the conveyance. (A.P. Doc. 60, Ex. A, ¶ 11).

Viewing the evidence in the light most favorable to the nonmoving party, the Court considers the possibility that the first relevant litigation was the filing of the petition by plaintiff in Chancery Court to have Defendant removed as executor of the Eva Trust. (A.P. Doc. 60, Ex. G). The petition was not filed until August 9, 2002. *Id.* Further, the initial Complaint commencing the suit before this Court (which is the only action purportedly seeking damages related to the transfer of the William Wilson Property) was not filed until August 9, 2008. (A.P. Doc. 1).

Only one of the two deeds can be operational – either the 1984 Deed was a valid transfer of the property, thereby cutting off the line of subsequent transfers not stemming from the Defendant[9], or the 1999 Deed was an effective transfer. Also, the Court could make a finding that either the 2002 Petition to have Defendant removed as executor of the Eva Trust, or the 2008 filing of the Complaint to commence the dischargeability action was the necessary lawsuit to bring this claim before a court. With regard to the Motion, the Court need not determine which

---

[9] *See Benton v. Harkins*, 800 So.2d 1186 (Miss. Ct. App. 2001)(Once grantor executed and delivered deed conveying property to children, deed was complete beyond grantor's control and power to alter, even if grantor subsequently changed her mind and instructed attorney to draft new deed conveying entire property to son).

8

was the operative deed or lawsuit because even if the Court were to accept the closest possible dates by which to consider the statute of limitations, Plaintiff is still outside of the three-year period (3/15/1999 deed – 8/9/2002 litigation). In any possible combination of these events, the applicable three-year statute of limitations had run before litigation was commenced.

The Plaintiff has not cleared the first step of determining nondischargeability, nor may it ever do so as the relevant state law claim is barred by the statute of limitations.

### C. Valid Transfer of the William Wilson Property

Assuming, *arguendo*, that the statute of limitations had not yet run, the Plaintiff has still failed to provide sufficient evidence to rebut Defendant's evidence that his actions were proper. The Defendant, and movant in this Motion, has submitted unrebutted evidence that the transfer of title of the William Wilson Property was properly carried out pursuant to the specific and written wishes and directions of the trust settlor. The Plaintiff's failure to respond to the Motion beyond general denials, or to provide evidence supporting the allegations stated in the Complaint to which the Plaintiff would bear the burden at trial, entitle the Defendant to a grant of partial summary judgment. *F.R.C.P.* 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)(summary judgment is appropriately made "against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial").

As already stated in the aforementioned analysis, the 1984 Deed from Aunt Katie to Defendant appears to be effective as to transferring the William Wilson Property and her interest therein to the Defendant.[10] Even had the transfer of ownership of the William Wilson Property not effectively occurred in 1984, it undoubtedly occurred in 1999. Aunt Eva was the

---

[10] In which case, the transfer of the property into and between the trusts would be a nullity.

9

settlor/creator and sole beneficiary of the Eva Trust. (A.P. Doc. 60, Ex. E). Being a revocable trust, Aunt Eva reserved the right to gift any of the property of the trust to any person during her lifetime, to alter the beneficiaries of the trust or what they would receive, to remove property of the trust, and to revoke the trust all together. (A.P. Doc. 60, Ex. E, e.g. Art. I(A); Art. III(C); Art. VII(O); Art. XVIII). The controlling consideration in construing a trust is to effectuate the intent of the person establishing the trust. *Deposit Gnty. Nat'l. Bk. of Jackson v. First Nat'l Bk. of Jackson*, 352 So.2d 1324, 1327 (Miss. 1977). "To the extent the terms of the agreement are not in violation of a statute or represent an impossibility of performance, the administration of a trust must accord strictly with the intent of the grantor and the terms of the trust." 8 Jackson and Miller, *Encyclopedia of Mississippi Law*, § 73:8 at 427 (citing *Reedy v. Johnson's Estate*, 200 Miss. 205, 26 So.2d 685 (1946)).

> When determining the proper execution of a trustor's intentions, a court:
>
> will emphasize the ultimate intention of the trustor rather than the interests of the beneficiaries, and the prime consideration is the necessity for the preservation of the estate, and not merely the administration of the trust in a way to produce a greater benefit for the beneficiaries.

*Reedy*, 200 Miss. at 212. It is clear from the trust terms that it was the intention of Aunt Eva, the trustor, to maintain control over the disposal of trust property during her lifetime. Furthermore, the *Restatement (Third) of Trusts* provides that absent contrary provision in the terms of the trust, the settlor's power to revoke or modify the trust can be exercised in any way that provides clear and convincing evidence of the settlor's intention to do so. *Id.* at § 63. The written directive of Aunt Eva to the Defendant provides such clear and convincing evidence of Aunt Eva's intention that the William Wilson Property be conveyed to Defendant. Aunt Eva specifically reserved the power to make such gifts out of trust property.

The relevant powers of Aunt Eva, enumerated in the terms of the trust, include:

Article III:    "During the lifetime of the Creator, the Trustee shall hold, administer and distribute the property in trust in accordance with the following provisions:...
    C.    The Trustee may also make gifts of the trust assets, principal or income, *as directed by either the Creator* or the Creator's personal representative... *The gifts can be made by the Trustee to any person including, without limitation, relatives of the Creator* as well as to charitable organizations."

Article VII:    "Except as otherwise herein expressly provided, the administration and management of the trust herein created... shall be in accordance with and governed by the terms and provisions of the Uniform Trustees' Powers of Law of Mississippi... as it now exists or may hereafter be amended. However, in addition to the powers contained in that law, the Trustee shall have full authority:
    O.    To make gifts of income or principal of the trust assets, annually or more frequently, to specific donees, *relatives*, or charitable organizations. Said gifts can be made of either real property or personal property and can also *be made through a fiduciary or agent acting on behalf of the Settlor...*"

Article XVIII: "The Creator reserves the following rights, powers and authorities:
    A.    *To withdraw property from this trust in any amount* and at any time upon giving reasonable notice in writing to the Trustee;...
    B.    To change the beneficiaries, their respective shares and the plan of distribution of the trust estate;
    E.    To amend this Trust Agreement in any respect;
    F.    *To direct the Trustee*, either directly or through her attorney-in-fact under a durable power of attorney or through a conservator or guardian, *to make gifts of trust principal to such person or trusts as the Creator shall designate*; and
    G.    To revoke this trust in its entirety..."

(A.P. Doc. 60, Ex. E, Art. III(C); Art. VII(O); Art. XVIII)(emphasis added).

Aunt Eva specifically reserved the right to make any gift of trust property during her lifetime, and to any person including relatives. *Id.* Though Defendant very literally "dealt the property" to himself, the action was carried out in his capacity as appointed Trustee, while he received the property in his capacity as relative and/or chosen beneficiary of the Creator. It was a revocable trust and as such, Aunt Eva had no duty to secure the approval of anyone – including future contingent beneficiaries such as her sister Maggie – before transferring property. Pursuant

11

to the trust authority cited above, Aunt Eva executed a valid consent and instructions to Defendant regarding the deed of the William Wilson Property. (A.P. Doc. 60, Ex. J). That Defendant also obtained the written consent of his mother, Maggie Smith, out of an abundance of caution, was not necessary. (A.P. Doc. 60, Ex. K). The written consent of a future contingent beneficiary had no effect on the validity or invalidity of the transfer.[11] *Johnson v. First National Bank*, 386 So.2d 1112 (Miss. 1980)(court found that even in the instance of an irrevocable trust, a settlor who is the sole beneficiary of a trust had the right to revoke and terminate the trust and dispose of trust funds). Pursuant to the terms of the Eva Trust, during Aunt Eva's lifetime, trust property was hers to dispose of or keep as she saw fit. (A.P. Doc. 60, Ex. E, Art. XVIII). There is no clause or section of the trust documents which would require Aunt Eva to first seek the approval of any future contingent beneficiary.

Neither Maggie Smith nor her estate has standing to contest the transfer of deed since the property was withdrawn from the trust by its creator/settlor. "One seeking to enforce a trust must have an interest in the trust before becoming entitled to any relief." 8 *Encyclopedia of Mississippi Law – Trusts* § 73.16 (citing *Dibrell v. Carlisle*, 48 Miss. 691 (1873)). Aunt Eva was the sole beneficiary of the trust during her lifetime – no rights vested in anyone until Aunt Eva's death or incapacity. The Mississippi Supreme Court held the same in *Johnson v. First National Bank*, wherein the court stated that the settlor and sole beneficiary of a trust had the right to modify or even terminate a trust, and that it was not the business of the court to substitute its judgment for that of the creator/settlor. 386 So.2d at 1115. The court further held that "no one has standing to object to the ending of the trust in cases of this type where the settlor demands that the trustee return the trust property to him and the trustee acquiesces." *Id.* at 1114. Though

---

[11] The written consent is, however, important to the issue of waiver discussed below.

the property in the instant case was given to a relative and not returned to the creator/settlor, the principle that the judgment and decisions regarding disposal of one's property should not and may not be challenged still holds true.[12] The transfer of the William Wilson Property was effectuated at Aunt Eva's direction before her death, and as such, no contingent beneficiary has the right to challenge it. Of course, this is especially true when, as here, the contingent beneficiary expressly consented to the transfer.

Though Plaintiff provided no evidence and no authority in its Response to the Defendant's Motion, the Plaintiff did cite to one case during the hearing on the Motion. Plaintiff refers to *In re Conservatorship of Estate of Loyd*, 868 So.2d 363 (Miss. Ct. App. 2003), in which the Mississippi Court of Appeals affirmed a Chancery Court ruling which removed a trustee for breach of fiduciary duty, canceling land deeds executed by the former trustee, and ordering an accounting for trust property. Although many of the allegations contained in *Loyd* overlap with those leveled by the Plaintiff, the Court finds that the *Loyd* case is distinguishable from the one at hand. First, in *Loyd*, there was no written directive from the grantor to the grantee/trustee, ordering them to dispose of the property in question. In this case, unrebutted evidence from Defendant shows that Aunt Eva specifically directed Defendant to deed the property out of the revocable trust and into his individual possession. (A.P. Doc. 60, Ex. J.).

Second, in *Loyd* there was significant evidence that the grantor had been suffering from dementia and had been having hallucinations for years prior to the transactions in question.

---

[12] This position is consistent with that of nearby states of Alabama, Missouri and Texas, all three of which have held that "where a trust remains revocable the trustee only has fiduciary duties to the creator/settlor of the trust, and contingent beneficiaries have no standing to contest what the creator/settlor does with his/her own property or instructs the trustee to do with it." (A.P. Doc. 62, at Ftn. 2)(citing *Ex parte Synovus Trust Co.*, 41 So.3d 70, 74 (Ala. 2009); *In re Gunther*, 350 S.W.3d 44 (Mo. App. 2011); *Moon v. Lesikar*, 230 S.W.3d 800 (Tex. Ct. App. 2007)).

13

*Loyd*, 868 So.2d at 367. Conversely, at no time has any party alleged that Aunt Eva suffered from diminished mental capacity, nor has there been any evidence suggesting such.

While Mississippi case law states that the "existence of a confidential or fiduciary relationship gives right to a presumption of undue influence" *Loyd*, 686 So.2d at 369 (*citing Estate of Volmer v. Volmer*, 832 So.2d 615, 619 (Miss. Ct. App. 2002)), the three-prong test cited by *Loyd* for overcoming that presumption does not clearly and accurately reflect the modification to the third prong previously made by the Mississippi Supreme Court. *Loyd* cites to the test taken from *Murray v. Laird*, 446 So.2d 575 (Miss. 1984), which stated:

> "When the circumstances give rise to a presumption of undue influence, the burden of going forward with the proof shifts to the grantee/beneficiary to prove by clear and convincing evidence:
> (1) good faith on the part of the grantee/beneficiary;
> (2) grantor's full knowledge and deliberation of his actions and their consequences; and
> (3) advice of (a) a competent person, (b) disconnected from the grantee and (c) devoted wholly to the grantor/testator's interest

*Murray*, 446 So.2d at 578. However, the third prong of the test was modified in *Mullins v. Ratcliff*, 515 So.2d 1183 (Miss. 1987), which held that while the subsections of the third prong are useful guideposts for the courts, "the independent advice prong of *Murray* has been read too strictly." *Id.* at 1193. Instead, the court held that the prong should simply be that "the grantor/testator exhibited independent consent and action..." and that "the factors listed in *Murray*... should be treated as factors that may be considered when independent action is proven by independent advice." *Id.* Despite *Loyd* being decided after *Mullins*, numerous cases that post-date both *Loyd* and *Mullins* cite to the *Mullins* standard. *See, e.g., In re Estate of Holmes*, 961 So.2d 674, 680 (Miss. 2007); *In re Estate of Hart*, 20 So.3d 748 (Miss. Ct. App. 2009); *Forbes v. St. Martin*, 2013 WL 791847, *23 (Miss. Ct. App. Mar. 5, 2013). Independent advice

14

– as demonstrated through the *Murray* sub-factors – is one way independent consent and action may be shown. However, it is not the only way.

> *Murray* set forth a three-prong test to rebut the presumption of undue influence. *Murray*, 446 So.2d at 578. The third prong of that test was proof of advice of a competent person, disconnected from the grantee and devoted wholly to the grantor/testator's interest. *Id. Mullins* modified the third prong and said that instead of independent advice independent consent and action is required. *Mullins*, 515 So.2d at 1193.

*Forbes*, 2013 WL 791847 at fn. 5.

This Court is satisfied by the written directive and consent of Aunt Eva, as witnessed by her friends and family, as well as the separate written consent of future contingent trust beneficiary, Maggie Smith, showing that Aunt Eva gave independent consent. In summation, the only case relied upon by Plaintiff is distinguishable from the case at hand on numerous grounds, and the Court is not persuaded by Plaintiff's comparison.

### D. Waiver

Lastly, Defendant is entitled to grant of partial summary judgment as the evidence demonstrates that Plaintiff is estopped from bringing this action as to the William Wilson Property. Plaintiff, though under the direction of Defendant's brother, David Smith, is the Estate of Maggie Mae Smith. There is no evidence that Maggie Smith objected to the transfer in any way. In fact, the opposite is true. Maggie Smith specifically consented to the transfer in writing, thereby effectively waiving any right to challenge it (to the extent she had any such right at all). (A.P. Doc. 60, Ex. K). Waiver is the voluntary and intentional relinquishment of a known right. *Bellemere v. Geico General Ins. Co.*, 977 So.2d 363, 369 (Miss. Ct. App. 2007). Maggie Smith not only gave her own, individual written consent (A.P. Doc. 60, Ex. K), but witnessed the written instructions of Aunt Eva (A.P. Doc. 60, Ex. J) directing Defendant to carry out the

15

transfer of ownership. As such, any right that Maggie had to challenge the conveyance was knowingly and purposefully waived.

### III. CONCLUSION

The Court is charged, when contemplating a motion for summary judgment, with viewing the evidence in the light most favorable to the non-moving party. However, "summary judgment is nonetheless appropriate against a party who fails to make a showing sufficient to establish an element essential to the party's case." *Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 549-550 (5th Cir. 1989). A mandatory preface to a suit for nondischargeability of a debt under § 523(a) is the establishment of an underlying debt. *Taylor*, 137 B.R. at 929. The underlying claim is subject to the normal statute of limitation requirements as imposed by the relevant state law. "[I]f the suit is not brought within the time allotted under state law, the debt cannot be established." *McKendry*, 40 F.3d at 337. Consequently, the nondischargeability action cannot survive as to the William Wilson Property. Even construing all facts in a light most favorable to the Plaintiff, the underlying claim fails as being barred by the statute of limitations. Further, the Court finds that no interpretation of the evidence as presented could support a conclusion that the underlying transfer of the William Wilson Property was fraudulent or contrary to applicable law. Finally, the claim (to the extent she had a claim) was waived by Maggie Smith and the waiver is now binding on her estate. For each of the independent foregoing reasons, any one of which would have been sufficient, the underlying claim fails. As such, the Court never reaches the issue of nondischargeability.

There is no genuine issue of material fact and Defendant is entitled to summary judgment as to the transfer of the William Wilson Property. Accordingly, it is hereby

**ORDERED, ADJUDGED** and **DECREED** that Plaintiff's Motion for Partial Summary Judgment is **GRANTED.** Final Judgment will not be entered pursuant to Federal Rule of Civil Procedure 54(b) at this time.[13] All claims remain pending with regard to the other transfers detailed in the Complaint and the Court will schedule a pre-trial hearing as to those claims.

Jason D. Woodard
United States Bankruptcy Judge

---

[13] Federal Rule of Bankruptcy Procedure 7054 incorporates without modification of Rule 54 of the Federal Rules of Civil Procedure.